UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CAYUGA NATION,

                                    Plaintiff,

-vs-

CHARLES DIEBOLD, IN HIS OFFICIAL
CAPACITY AS CHIEF OF THE SENECA-
CAYUGA NATION; CURT LAWRENCE IN HIS
OFFICIAL CAPACITY AS SECOND CHIEF OF
THE SENECA-CAYUGA NATION, KIM GUYETT
IN HER OFFICIAL CAPACITY AS SECRETARY-
TREASURER OF THE SENECA-CAYUGA NATION,
CYNTHIA DONOHUE BAUER IN HER OFFICIAL
CAPACITY AS COUNCILPERSON OF THE SENECA-
CAYUGA NATION, AMY NUCKOLLS IN HER
OFFICIAL CAPACITY AS COUNCILPERSON OF
THE SENECA-CAYUGA NATION, HOYIT
BACON IN HIS OFFICIAL CAPACITY AS
COUNCILPERSON OF THE SENECA-CAYUGA
NATION, TONYA BLACKFOX IN HER OFFICIAL
CAPACITY AS COUNCILPERSON OF THE
SENECA-CAYUGA NATION, DUSTIN PARKER
AND WARREN JOHNS,

                                    Defendants.

_____

DECISION and ORDER

21-CV-6630 CJS

## INTRODUCTION

Now before the Court is a motion (ECF No. 35) to intervene in this action by Justice

for Native First People LLC ("JNFP").  The application is denied.

## BACKGROUND

The reader is presumed familiar with the facts of this action as set forth in the

various submissions that have been docketed.  *See*, ECF Nos. 1-44.   Briefly, on

October 7, 2021, the Cayuga Nation filed this action to enforce its alleged sovereign rights against the Seneca-Cayuga Nation of Oklahoma ("Seneca-Cayuga") which was allegedly making rival claims to sovereign authority on land that is within the Cayuga Reservation but owned by the Seneca-Cayuga.  The alleged offense against the Cayuga Nation's sovereignty consisted of the sale of untaxed native-brand cigarettes at a retail establishment, "Pipekeepers Smoke Shop" ("Pipekeepers"), located on the Seneca-Cayuga's land and operated by persons whom the Cayuga Nation suspected of being agents for the Seneca-Cayuga.[1]   In particular, the Cayuga Nation alleged that Pipekeepers was being operated by defendants Dustin Parker ("Parker") and Warren Johns ("Johns"), acting in concert with the Seneca-Cayuga, even though Parker and Johns are members of the Cayuga Nation.

The lawsuit did not seek a determination concerning the legality of the Pipekeepers shop selling untaxed cigarettes, *per se*.[2]   Nor did the Cayuga Nation seek any determination that any lease between the Seneca-Cayuga and Parker and/or Johns was void for illegality.[3]   Rather, as already indicated, the lawsuit sought a declaration that the sale of such cigarettes within the boundary of the Cayuga Reservation was a violation of the Cayuga Nation's sovereign rights. *See, e.g.*, Compl. at ¶ 4 ("[T]he Cayuga Nation brings this suit to vindicate its sovereign rights.  The Treaty of Canandaigua and federal

---

[1] The Oklahoma-based Seneca-Cayuga Nation owns the parcel of real property located at 126 East Bayard Street in Seneca Falls, New York, which houses the Pipekeepers gas station and convenience store.  This property is located within the Cayuga Reservation, which has never been disestablished.
[2] The Complaint asked the Court to assume as a fact that the Cayuga Nation had the right under New York law to sell native-brand cigarettes tax-free to non-Indians. *See*, Compl. at ¶ 27 ("The State of New York has never sought to impose its cigarette sales tax obligations on the Cayuga Nation's sales of these or other 'native brand' cigarettes.").
[3] At most, the Complaint alleged that insofar as a lease existed between Seneca-Cayuga and Parker and Johns, Seneca-Cayuga Nation could, if it wanted, utilize New York Real Property Law § 231(1) to void the lease since Parker and Johns were not in compliance with New York sales tax obligations. *Id*. at ¶ 55.

law protect the Cayuga Nation's exclusive right to exercise its sovereign rights on its reservation and provide a cause of action to redress the violation of those rights by the Seneca-Cayuga Nation, Parker, and Johns.").  The Complaint also alleged that the Seneca-Cayuga Nation was prohibited from operating a smoke shop at the subject premises by the terms of a consent judgment between the United States and the Seneca-Cayuga Nation issued in 2014.[4]

On November 26, 2021, the Cayuga Nation sought preliminary injunctive relief enjoining Defendants from selling, or authorizing or permitting the sale of, tax-free cigarettes and other tax-free goods on the Cayuga Nation's reservation." (ECF No. 16). The application essentially indicated that the Cayuga Nation was likely to succeed on the merits of its claim inasmuch as the Seneca-Cayuga Nation was violating the Cayuga Nation's sovereignty by projecting itself inside the Cayuga Reservation and engaging in conduct (the tax-free sale of cigarettes) that only the Cayuga Nation could perform.

Cayuga Nation's motion papers contained a passing reference to an individual named Paul Meyer ("Meyer") who, according to the Cayuga Nation, had some affiliation with the Seneca-Cayuga Nation, and who had conveyed to the Cayuga Nation an offer by the Seneca-Cayuga Nation to sell the subject property to the Cayuga Nation.  *See*, ECF No. 16-1 at ¶ 18.[5]

---

[4] *See, United States v. The Sum of Approximately $554,058.15 Seized from Community Bank, NA, Acct. No. 630022416 in the Name of Seneca-Cayuga of Oklahoma, Skydancer Covenience Store*, Case No. 13-CV-6313 DGL (W.D.N.Y.).

[5] *Id*. ("On November 8, 2021, a representative of the Cayuga Nation was approached by an individual named Paul Meyer. Mr. Meyer was known to have some affiliation in the past with the Seneca-Cayuga Nation. On November 8, Mr. Meyer relayed an offer, purportedly from the Seneca-Cayuga Nation, to sell the 126 East Bayard Street facility to the Cayuga Nation, if the Nation also would purchase a second property on the Cayuga Reservation.").

The Court subsequently held two court appearances, on December 6, 2021, and December 13, 2021, respectively, concerning the application for preliminary injunctive relief.[6]  During one of those appearances, the Court recalls there being some mention by counsel of the fact that Meyer was actually the tenant of the subject premises, who had sublet the property to Parker and Johns.  Also at those appearances, there were statements by the attorneys for the Cayuga and Seneca-Cayuga Nations concerning attempts to settle the action.  At the conclusion of the appearance on December 13, 2021, the Court indicated that it was taking the matter under advisement and would be issuing a decision shortly.

On December 9, 2021, Parker, proceeding *pro se*, filed an Answer. (ECF No. 30). Parker indicated that both he and Johns were members of the Cayuga Nation.  Indeed, Parker indicated that he was a leader of the Cayuga Nation, and that as such he had the right to sell tax-free cigarettes at the Pipekeepers shop.  Parker further asserted that Plaintiff in this action did not actually speak for the Cayuga Nation as a whole, but, rather, that Plaintiff was really just a "faction" of the Cayuga Nation led by Clint Halftown ("Halftown"), the federally-recognized representative of the Cayuga Nation.  Parker stated that he and Johns never acted in concert with the Seneca-Cayuga Nation, and that the instant action was really just an attempt by the "Halftown Faction," which operates multiple smokeshops within the reservation, to shut down the Pipekeepers shop to prevent Parker and Johns from cutting into their profits.  Parker maintained that the dispute was "an internal Cayuga Nation Sovereignty matter that respectfully must be handled internally

---

[6] The second such appearance was held specifically to ensure that Parker and Johns had an opportunity to appear and be heard.

and not by outside Court interference."[7]

On December 16, 2021, the Court received a telephone call from Meyer, who, though not a party to the action, asked if the Court would delay issuing a ruling on the motion for preliminary injunctive relief, purportedly since some type of "deal" was being discussed by the parties.  According to a later sworn declaration from Cayuga Nation's attorney, the proposed "deal" to which Meyer referred was that Meyer would purchase the property from the Seneca Cayuga and immediately re-sell it to the Cayuga Nation.[8] Right after Meyer's call to the Court, the Court's law clerk sent an email to counsel, stating, in pertinent part:

> Hello Counsel, [for your information,] a few minutes ago the Court received a phone call from Paul Meyer, who spoke with the Judge's judicial assistant, Kelly.  Mr. Meyer asked if Judge Siragusa would delay issuing a decision on the application for preliminary injunctive relief, since there is some type of deal in the works that may obviate the need for a ruling.  . . .  [Kelly told Meyer] that since he is not an attorney or a party to the action he would need to talk to the attorneys and have one of you contact the Court if necessary.  The Court is on track to issue a decision tomorrow, unless we hear from you.

Counsel for the Seneca-Cayuga Nation responded, stating in pertinent part: "We are surprised that Mr. Meyer contacted the Court and are not requesting the decision be held in abeyance."[9]

The following day, December 17, 2021, as the Court was preparing to issue its ruling on the application for preliminary injunctive relief, the Cayuga and Seneca-Cayuga

---

[7] Parker Answer, ECF No. 30 at ¶ 5.
[8] *See*, Burch Decl., ECF No. 41-1 at ¶ ¶ 3–4 ("In the middle of December 2021, Paul Meyer attempted to broker a deal in which he would purchase the property where Pipekeepers Tobacco and Gas is located from the Seneca-Cayuga Nation, and then immediately sell the property to the Cayuga Nation.  The two Nations instead dealt directly with one another.").
[9] Email message of Joshua Glasgow, Esq., dated December 16, 2021, at 1:20 PM.

Nations informed the Court that they had reached a settlement, involving the sale of the subject property by the Seneca-Cayuga Nation to the Cayuga Nation.  Consequently, the Court held the entire matter in abeyance to allow the parties time to complete the sale and discontinue the action.  *See*, Text Order, ECF No. 34 ("On December 17, 2021, Plaintiff's counsel notified the Court by email in relevant part as follows: '[T]he parties have reached an agreement in principle for the sale of the property, which when concluded in an imminent quit claim transaction will result in the withdrawal of the pending motions for injunctive relief and the stipulated discontinuance of this action. The parties jointly request that a decision on the pending motions for injunctive relief be held in abeyance for what is anticipated to be the short period of time needed to conclude the transfer of title, withdraw the motions and discontinue the action.' The joint request for the matter to be held in abeyance is granted. Plaintiffs' counsel shall provide the Court with a written status report within sixty days, unless the matter is discontinued sooner.  Status report is due 3/28/22. So Ordered.").

The action appeared to be resolved.  However, on February 8, 2022, JNFP filed the subject "motion to intervene as of right" pursuant to Fed. R. Civ. P. 24(a). (ECF No. 35).  The application indicated that JNFP, which is solely owned by Meyer, was actually the tenant of the subject premises under the lease with the Seneca-Cayuga Nation, not Meyer.  Additionally, JNFP indicated that it had a four-year lease for the premises from the Seneca-Cayuga Nation.   JNFP stated that it was not operating the Pipekeepers smoke shop itself, but had sub-let the premises to Parker and/or Johns, who as members of the Cayuga Nation, were entitled to operate the shop and sell tax-free cigarettes.

JNFP argued that it was entitled to intervene in this action "to protect its leasehold interests."  In that regard, JNFP stated that it had learned on December 27, 2021, that the Seneca-Cayuga Nation had sold the premises to the Cayuga Nation, subject to the lease and sublease.  However, JNFP alleged that on or about January 1, 2022, the Cayuga Nation had shut down the Pipekeepers shop and barricaded the property.  Regarding those activities, the motion to intervene stated in pertinent part:

> The Cayuga Nation purchased the building from the Seneca Cayuga Nation in December 2021 specifically to drive Dustin Parker out of business, in an anticompetitive move to protect the Halftown faction's own untaxed cigarette monopoly. The Cayuga Nation (Halftown faction) declared the business illegal and purported to void the lease, exercising what it believed was its right as landlord under New York Real Property Law §231(1). The Cayuga Nation (Halftown faction) stormed the premises, shuttered the store, barricaded its entrances and completely shut down Parker's operation. In their rush to quash the competition, the Halftown faction failed to account for the prime lease held by Justice for Native First People LLC. And the Halftown faction apparently never considered whether a member of Cayuga Nation, like Parker, has the legal right to sell Native-branded cigarettes and commercial cigarettes without collecting or remitting state taxes. In fact, as much as the Cayuga Nation (Halftown faction) would like to have a legal monopoly, Parker has the right under New York law to engage in that business. His Pipekeepers' smoke shop is legal under New York law, as reported in an attorney opinion letter provided to Justice for Native First People, LLC. It may not sit well with the Halftown faction but they are not entitled to sit as judge and jury and invoke landlord remedies without regard to New York law.
>
> Intervenor-Defendant Justice for Native First People, LLC's leasehold interest has become collateral damage in the Halftown faction's illegal suppression of competition. No lawful action has been taken against Justice for Native First People, LLC and its leasehold interest should be vindicated and respected—declared to still be valid.  Upon being granted intervenor-defendant status, Justice for Native First People LLC will promptly file an answer and counterclaim, the latter effectively mirroring what the Halftown faction sought affirmatively in filing its complaint, but in reverse: a declaration of the legality of the prime lease and the invalidity of its

7

voiding.[10]

ECF No. 35-2 at pp. 4–5.[11]  JNFP states that "the counterclaim would seek compensatory damages from the Halftown faction for wrongfully voiding the lease and evicting Dustin Parker, which caused financial injury to both the lessee and sublessee."). ECF No. 35-2 at p. 11.

In sum, JNFP seeks to intervene in this action because it wants to assert a claim against the Cayuga Nation, contending that after the Cayuga Nation purchased the subject premises from the Seneca-Cayuga Nation it improperly terminated JNFP's lease based on a misapplication of New York Real Property Law ("RPL") §231(1), which states:

> Whenever the lessee or occupant other than the owner of any building or premises, shall use or occupy the same, or any part thereof, for any illegal trade, manufacture or other business, the lease or agreement for the letting or occupancy of such building or premises, or any part thereof shall thereupon become void, and the landlord of such lessee or occupant may enter upon the premises so let or occupied.

According to JNFP, the Cayuga Nation deemed the lease void under RPL § 231(a) on the theory that the sale of untaxed cigarettes by Parker and Johns was unlawful as a violation of New York State tax law and/or as a violation of the Cayuga Nation's sovereignty.  JNFP asserts that the purported voiding of the lease on that basis was unlawful since its tenants, Parker and Johns, were not doing anything illegal on the leased premises.  In particular, JNFP contends that Parker and Johns, as members of the Cayuga Nation, had the right to sell untaxed native-brand cigarettes.[12]  JNFP emphasizes

---

[10] JNFP's assertion that such a counterclaim would "mirror" the Cayuga Nation's claim is incorrect, as the Cayuga Nation never sought any declaration from this Court concerning JNFP's lease.
[11] When citing to documents filed on CM/ECF, the Court refers to the page numbers assigned by CM/ECF, appearing at the top of the docketed document, which may vary from the page numbers in the footers of the filed documents.
[12] *See*, Mot. to Intervene, ECF No. 35-2 at p. 7 (Asserting that "New York Tax Law § 470 permits individual

that any dispute regarding this matter is "governed exclusively by state and local law."[13]

Meanwhile, on February 9, 2022, the day after JNFP filed the motion to intervene, the Cayuga Nation and Seneca-Cayuga Nation filed a stipulation of discontinuance (ECF No. 36) as to the claims against the Seneca-Cayuga.  On February 15, 2022, the Cayuga Nation also voluntarily discontinued the action against Johns, who had never appeared or answered the Complaint.  That same day, the Cayuga Nation also filed a motion (ECF No. 40) to voluntarily discontinue the action against Parker.  Parker never opposed the motion, and on April 4, 2022, the Court granted the Cayuga Nation's motion and dismissed Parker from the action.

Consequently, all the original defendants have now been dismissed from the action and the only remaining matter is JNFP's motion to intervene.  JNFP contends that it must be permitted to intervene since it "is an indispensable party under Rule 19(a) of the Federal Rules of Civil Procedure," arguing that, "in an action to set aside a lease or contract, all parties who may be affected by the determination of the action are indispensable."[14]   JNFP further maintains that it meets all the requirements for intervention as of right under Fed. R. Civ. P. 24(a)(2), which will be discussed below. JNFP also asserts that it may properly assert the aforementioned counterclaim since, *inter alia*, the Cayuga Nation is not protected by sovereign immunity in disputes involving immovable real property.[15]

---

members of New York tribes to operate a smoke shop without collecting or remitting state sales tax.").
[13] ECF No. 35-2 at p. 8.
[14] ECF No. 35-2 at p. 8.  Again, JNFP's characterization of this action is inaccurate, since it is not "an action to set aside a lease or contract."
[15] ECF No. 35-2 at pp. 8–10.

Cayuga Nation opposes the motion to intervene, arguing primarily that the application is moot since the main action has already been settled. Alternatively, Cayuga Nation contends that JNFP does not qualify to intervention as of right under Fed. R. Civ. P. 24(a) for the following reasons: 1) the motion is untimely since it was filed after there was already an agreement in principle to settle the action, and JNFP had been aware of the action for "an extended period" prior to that and, indeed, Meyer had attempted to broker a resolution of the dispute in mid-December; 2) JNFP has no interest in this action, which involves the Cayuga Nation's sovereign rights, rather than "the validity of a lease under New York law";[16] 3) denial of the motion to intervene will not impair JNFP's rights since the Cayuga Nation has not asked the Court to make any determination concerning the validity of the lease; and 4) the proposed counterclaim is barred by the Cayuga Nation's sovereign immunity.

On February 28, 2022, JNFP filed a reply, indicating that its motion is not moot since it was filed prior to the discontinuance of the action against Parker. JNFP also insists that the motion to intervene is timely, since it was filed shortly after Cayuga Nation evicted Pipekeepers from the premises. Finally, JNFP reiterates that its proposed counterclaim against Cayuga Nation is not barred by sovereign immunity.

The Court has carefully considered the competing arguments and finds, for reasons discussed below, that the motion to intervene should be denied.

---

[16] ECF No. 41 at p. 3.

DISCUSSION

JNFP purports to be entitled to intervene as of right pursuant to Fed. R. Civ. P. 24(a), which states:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
>> (1) is given an unconditional right to intervene by a federal statute; or
>> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

JNFP does not claim that it "is given an unconditional right to intervene by federal statute."

Accordingly, JNFP is moving pursuant to Rule 24(a)(2).

> To obtain intervention as of right under Federal Rule of Civil Procedure 24(a)(2), the putative intervenor must establish that: (1) the motion is timely; (2) [it] asserts an interest relating to the property or transaction that is the subject of the action; (3) [it] is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede [its] ability to protect its interest; and (4) [its] interest is not adequately represented by the other parties.

*CWCapital Cobalt Vr Ltd. v. U.S. Bank Nat'l Ass'n*, 790 F. App'x 260, 262 (2d Cir. 2019)

(citing *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 389 (2d Cir. 2006)).

With regard to the timeliness of a motion to intervene, the Second Circuit has stated the following:

> [W]hether intervention is sought by right or permission, it must be timely. In assessing timeliness, this Court considers, among other things, (1) how long the applicant had notice of its interest in the action before making its motion; (2) the prejudice to the existing parties resulting from this delay; (3) the prejudice to the applicant resulting from a denial of the motion; and (4) any unusual circumstance militating in favor of or against intervention. A district court has broad discretion in assessing the timeliness of a motion to

intervene, which defies precise definition.

*Griffin v. Sheeran*, 767 F. App'x 129, 133 (2d Cir. 2019) (citations and internal quotation marks omitted).

As for the sufficiency of the proposed intervenor's interest in the action, the Second Circuit has remarked that, "if a party is not 'necessary' under Rule 19(a), then it cannot satisfy the test for intervention as of right under Rule 24(a)(2)." *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006).

> A party is "necessary" under Rule 19 if: (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. Fed.R.Civ.P. 19(a).

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d at 385.

For a proposed intervenor to show that it has a sufficient interest under Rule 19, "the 'interest' asserted must be 'direct,' as opposed to 'contingent.'" *Greenidge v. Allstate Ins. Co.*, 82 F. App'x 728, 730 (2d Cir. 2003) (quoting *Restor–A–Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 874 (2d Cir.1984)). "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy [Rule 24(a)(2) ]." *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir.2001) (internal quotation marks omitted). Moreover, it is not enough for the proposed intervenor to show that it has a legal interest that is somehow being impaired or impeded; rather, the proposed intervenor must show that *the disposition of the action in the proposed intervenor's*

*absence* is the thing that impairs or impedes the interest. Fed. R. Civ. P. 19(a)(1).

Here, the Court finds that JNFP's motion is untimely, and that even if it was timely, JNFP has not shown a sufficient interest in being joined in this action. To begin with, the motion was untimely since JNFP undoubtedly knew about the lawsuit by mid-December, and probably much earlier.  However, JNFP waited until February 8, 2022, to file its motion.  Moreover, although the action was effectively settled just two months after it was filed, there was sufficient time for JNFP to have moved to intervene if it had wanted to do so.

It is clear to the Court, however, that JNFP had no intention of intervening in the action until after the Cayuga Nation took an action *unrelated to the actual lawsuit*, by closing the Pipekeepers shop in early January 2022.  Prior to that, JNFP and Meyer obviously had no objection to the disposition of the action in JNFP's absence from the lawsuit.  Indeed, Meyer had attempted to broker a resolution of the action by offering to purchase the property from the Seneca-Cayuga and sell it to the Cayuga.  Clearly, then, Meyer had no problem with the Cayuga Nation purchasing the property, even though it was evident that the Cayuga Nation disagreed with the claim by Parker and Johns that they could sell tax-free cigarettes without the approval of the "Halftown Faction."

Accordingly, it is not the disposition of the action in JNFP's absence that will allegedly harm JNFP's interest, but, rather, it was the unrelated action by the Cayuga Nation after it purchased the property.  Indeed, the legal "interest" which JNFP seeks to assert if it is permitted to intervene was not implicated when Cayuga Nation commenced this action without including JNFP as a defendant.  Rather, it did not yet exist. Furthermore, any interest that JNFP claims to have in this action is contingent upon it

showing that Cayuga Nation wrongfully voided the lease based on a misapplication of RPL § 231(a).  And in order to show that, JNFP would first have to show that its sub-tenants, Parker and Johns, are legally entitled to sell tax-free cigarettes at the subject premises.  Neither of those issues is affected by the disposition of this action in JNFP's absence.  This all indicates that JNFP is not a necessary party to this action under Rule 19(a), and therefore is not entitled to intervene.  Nor, in its discretion, does the Court find that permissive intervention is appropriate.[17]

JNFP also has not shown that it will be prejudiced by the denial of its motion to intervene, since it purportedly can pursue whatever remedies it has against the Cayuga Nation in a separate action.  Specifically, in that regard, JNFP maintains that the Cayuga Nation cannot assert the defense of sovereign immunity in response to JNFP's proposed claim, since the claim involves "immovable property."  *See*, ECF No. 35-2 at pp. 8–9 ("Even if the Halftown faction's litigation conduct [(i.e., the filing of the lawsuit against the Seneca-Cayuga Nation)] were deemed insufficient to waive tribal immunity from suit to the proposed counterclaim, their misconduct in voiding the lease is addressable in this court because it involves interests in real property, held in fee simple, that is governed by state and local law.  This is precisely the kind of interest in real property that is covered by the immovable property exception to sovereign immunity."); *see also, id*. at p. 9 ("The immovable property exception to sovereign immunity dictates that the Halftown faction be treated like any other commercial landlord when dealing with its tenants under New York

---

[17] *See, Bionpharma Inc. v. CoreRx, Inc.*, No. 21-CV-10656 (JGK), 2022 WL 580767, at *5 (S.D.N.Y. Feb. 24, 2022) ("Although permissive intervention is left to the discretion of the district court, courts consider substantially the same factors whether the claim for intervention is 'of right' under Rule 24(a)(2), or 'permissive' under Rule 24(b)(1)(B)."  When considering a request for permissive intervention, however, the central factor is whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.") (citations and internal quotation marks omitted).

law."). Accepting JNFP's assertion as true,[18] there will be no sovereign immunity impediment to JNFP suing the Cayuga Nation in another action.[19]

## CONCLUSION

For the foregoing reasons, JNFP's application to intervene (ECF No. 35) is denied. All defendants having now been dismissed from the action, the Clerk of the Court is directed to close this action.

SO ORDERED.

DATED:      April 8, 2022
            Rochester, New York

CHARLES J. SIRAGUSA
United States District Judge

---

[18] The Court takes no position on that point.
[19] JNFP further contends that it can sue individual officials of the Cayuga Nation "under the doctrine of Ex Parte Young." ECF No. 35-2 at pp. 13–14.